Nº 08-CV-2007 (JFB) (WDW)

KATHLEEN GIARDINA AND LYNN PANARIELLO,

Plaintiffs,

VERSUS

NASSAU COUNTY, ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
March 31, 2009

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiffs Kathleen Giardina ("Giardina") and Lynn Panariello ("Panariello") (collectively, "plaintiffs"), commenced this action against Nassau County (the "County") and the Civil Service Employees Association, Inc., A.F.S.C.M.E., Local 1000, AFL-CIO, by its Local 830 ("CSEA") (collectively, "defendants"), seeking to confirm and enforce an Arbitration Award dated June 15, 1998, and vacate a Consent Award dated December 15, 2006. Plaintiffs also bring a claim of breach of duty of fair representation under the Labor Management Relations Act ("LMRA") against defendant CSEA and breach of contract under the LMRA against defendant County. Plaintiffs also are seeking to assert a claim under 42 U.S.C. § 1983 for an alleged constitutional violation of their procedural due process rights. Finally, plaintiffs appear to be attempting to assert pendent state law claims.

Defendants now move to dismiss plaintiffs' amended complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In response to defendants' motion, plaintiffs seek to further amend the complaint to add allegations in support of their Section 1983 claim. In an abundance of caution, although it appears that there is a significant *res judicata* issue based upon a decision in Supreme Court, Nassau County, in January 2008, the Court will afford plaintiffs an opportunity to amend their complaint to further articulate their Section 1983 claim and attempt to address, through their allegations and relief sought, the *res judicata* issue. Thus, the motion to amend is granted and defendants' motion to dismiss is denied without prejudice to renewing that

motion following the filing of the amended complaint.

I. BACKGROUND

A. Facts

The following facts are taken from the amended complaint and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

Plaintiffs are former employees of the Nassau County District Attorney's Office, where they held the position of Confidential Court Reporters. On January 24, 1992, the Nassau County District Attorney's Office terminated the employment of a group of individuals, including plaintiffs, with the title of Confidential Court Reporter. (Amended Complaint ("Am. Compl."), Ex. 3, at 14.) In response, CSEA filed class action Grievance 9-92 on behalf of plaintiffs seeking their reinstatement. (*Id.* at 15.) This action went to arbitration in the fall of 1997. (*Id.*) Specifically, CSEA alleged that the County's actions violated Section 32 of the Collective Bargaining Agreement ("CBA" or "Agreement") entered into by CSEA and the County on January 1, 1990. (*Id.*) Section 32 of the Agreement states:

> Section 32.1: The County shall make good faith efforts to avoid the unnecessary assignment of CSEA unit work to persons not in the CSEA.
>
> Section 32.2: Before assigning CSEA unit work to persons not in the CSEA unit:
>
> a) The County shall provide notice to the CSEA stating the County's needs; and
>
> b) CSEA may, within (10) day's [sic] thereafter, propose alternatives to satisfy the County's needs; and
>
> c) If the CSEA proposes alternatives, the County and the CSEA shall meet and confer with respect to CSEA's proposals.
>
> Section 32.3: The County agrees it will not lay-off unit Employees as a direct result of a transfer of unit work.

(*Id.* at 15.) Despite this Agreement, the County "entered into personal services contracts and subcontracts with a number of private individuals and court reporting agencies on or about 1992, to exclusively perform the taking and transcribing of Grand Jury proceedings. The individuals and employees of the court reporting agencies were non-CSEA unit Employees." (*Id.*)

The opinion issued by the Arbitrator on June 15, 1998 found that "the County has violated Sections 32-1, 32-2 and 32-3 of the CBA. The County did not make a good faith effort to avoid the unnecessary assignment of the Grand Jury Court Reporter 1 work to persons not in the CSEA unit." (*Id.* at 21.) The Arbitrator then granted the following Award:

> Pursuant to a complete and careful review of all the testimony and evidence submitted at the hearings and, the Post Hearing Briefs

2

submitted by the parties, it is the Award of the Arbitrator that:

1. The County of Nassau violated Section 32-1 of the CBA when it did not make a good faith effort to avoid the unnecessary assignment of the Grand Jury Court Reporter 1 work, to persons not in the CSEA unit. The County of Nassau shall in the future comply with all of the provisions of Sections 32-1, 32-2 and 32-3 of the Collective Bargaining Agreement.

2. The County of Nassau violated Section 32-2 of the CBA when it failed to provide notice to the CSEA stating the County's needs, before assigning the Grand Jury Court Reporting work to persons not in the CSEA unit.

3. The County of Nassau violated Section 32-3 of the CBA when it laid-off the Confidential Court Reporters I, as a direct result of the transfer of Grand Jury Reporting Work.

4. The County shall reinstate the Grievants, Kathleen Giardina, Lynn Panariello and Laura Molison to their former pre-layoff positions in the office of the District Attorney and, made whole with full back pay, payment for transcripts that would have been ordered and, no loss of benefits, from the date of lay-off to the date of reinstatement, less any income earned and New York State Unemployment Insurance Benefits received by the Grievants. The demand for interest is denied.

5. The Arbitrator shall retain jurisdiction in this Award in the event of a dispute regarding the implementation of the Award to the Grievants.

(*Id.* at 21-22.)

The CBA between CSEA and the County included a provision that created a statute of limitations of forty-five days for the County Executive to reject any arbitration award. On August 5, 1998, however, CSEA and the County entered into an agreement waiving the forty-five day time limit in consideration for the County's agreement to waive the statute of limitations' defense in any lawsuit brought by the Union in connection with the grievance. This was done in order to attempt to reach a resolution of a large group of sub-contracting cases, of which plaintiffs' case was only a part. (Am. Compl., Exs. 5-6.) On March 9, 1999, CSEA wrote a letter to the County indicating that the August 4, 1998 agreement "was executed by the parties to allow both parties to continue negotiations intended to settle the referenced cases. As you are aware, those negotiations resulted in an agreement which is now a part of the successor collective bargaining agreement. However, while the agreement calls for the disposition of certain cases, it excludes the matter of grievance class

3

action 9-92. A natural consequence of this exclusion is that we must now proceed on class action 9-92." (Am. Compl., Ex. 5.) On March 15, 1999, the County represented to Panariello that "a successor agreement between the C.S.E.A. and the County has recently been reached through the Collective Bargaining process wherein certain monies shall be granted to the C.S.E.A. for the purposes of settling sub-contracting claims. The entire matter is currently before the Nassau County Legislature for final approval." (Am. Compl., Ex. 6.)

On March 6, 2000, CSEA filed a Notice of Petition to Compel Enforcement of Arbitrator's Award in the Supreme Court of the State of New York, Nassau County, on behalf of plaintiffs. On April 25, 2000, the County filed an Affirmation in Opposition to Confirmation of Arbitration Award and/or to Modify the Award, arguing that "[t]he award cannot be confirmed at this time as (i) it is subject to additional proceedings before the arbitrator concerning what amounts, if any, the grievants are due in the form of back pay or the costs of transcripts; and (ii) it must be modified to reflect the general release of one of the grievants in favor of Nassau County provided prior to entry of the arbitrator's award." (Am. Compl., Ex. 8, at 1.) The County further argued that the agreement between the parties waiving the statute of limitations "did not address how the parties should go about declaring the stipulation null and void and proceeding as if it were not ever in place." (*Id.* at 4.) The County also argued that "Kathleen Giardina is not entitled to any damages and/or reinstatement as ordered by the arbitrator in light of her complete general release of the Nassau County defendants on April 22, 1993 which only excepted the claims in the matter of *Calabritto v. Dillon et al*, Index No. 10107-92," a sexual discrimination action for wrongful termination that CSEA brought on behalf of Ms. Giardina, among others, and attached a copy of her release executed in consideration of her receipt of $15,000, dated April 22, 1993 "in full and final settlement of all claims she had raised in connection with the arbitrator's award in this matter." (*Id.* at 5-6; Am. Compl., Ex. 11, Ex. 17, at 7-9.) CSEA argued that the arbitration award became binding 45 days after CSEA's March 9, 1999 letter "announcing to the County that [it] wanted immediate action taken since this grievance had not been resolved as part of the negotiations that led to the creation of the current CBA in existence between the County and CSEA." (Am. Compl., Ex. 9, at 2.) The court in that action remanded the case to the Arbitrator pursuant to CPLR § 7511 to determine whether Ms. Giardina's release bars arbitration of her grievance, and what the precise damages awarded are. (Am. Compl., Ex. 10.)

Plaintiffs allege that Ms. Giardina was misled in signing the April 22, 1993 release, and did not believe that the release encompassed her claims in the 9-92 Class Action. (Am. Compl., Exs. 13-14.) She did not know that the 9-92 Class Action existed at the time she signed the release and neither the government nor the union informed her of it, despite representing that they would inform her of any other pending claims. (Am. Compl., Ex. 17B, at 31.)

On August 5, 2005, CSEA made a motion to compel arbitration in the Supreme Court of the State of New York, Nassau County. On December 1, 2005, Judge Cozzens granted the CSEA's motion, finding that "while there are some issues as it relates to damages that were decided in the Article 78 proceeding [after the

4

prior court order], there are other issues, the April 22, 1993 release and its effect on Ms. Giardina's grievance, that were not determined in the Article 78 proceeding." (Am. Compl., Ex. 16.) On June 26, 2006 and September 14, 2006, arbitration proceedings were held before Martin Scheinman, Esq. On December 15, 2006, the Arbitrator signed a consent award that purported to represent an agreement reached by the parties. (Am. Compl., Ex. 18.) The agreement stated that:

> 1. The County agrees to reinstate Laura Molison and Lynn Panariello from their layoff date until the date of this Consent Award for the purpose of obtaining thirtee [sic] (13) years of retirement credit. The County agrees to appropriate contributions to the retirement system to effectuate this paragraph.
>
> 2. Laura Molison and Lynn Panariello agree that they have irrevocably resigned from County employment as of the issuance of this Consent Award.
>
> 3. The County will make payments as follows: three hundred fifty thousand dollars ($350,000.00) to Laura Molison; two hundred thirty thousand dollars ($230,000.00) to Lynn Panariello; and fifty thousand dollars ($50,000.00) to Kathleen Giardina (Collectively the "Grievants").
>
> 4. The amounts referred to in paragraph 3, above will be considered complete and total payment for lost wages except that the following amounts are for health insurance premiums paid: twenty thousand ninety three dollars ($20,093.00) of the above referenced payment to Panariello; and fifteen thousand six hundred sixty six dollars and thirty eight cents ($15,666.38) of the above referenced to Molison.
>
> 5. For the purposes of pension credit, the above amounts attributable to lost salary for Panaariello [sic] and Molison will be divided into three (3) payments to obtain the salary for each of the three (3) years of service. These amounts are one hundred nine thousand nine hundred sixty nine dollars ($109,969.00) per year for Laura Molison; and seventy one thousand four hundred forty four dollars ($71,444.00) per year for Lynn Panariello.
>
> 6. By agreeing to this Consent Award the Grievants have agreed they release and have no claim against the County as a result of their layoff.
>
> 7. The County will make best efforts to pay half the amounts described in paragraph 3 in 2006 and half in 2007.
>
> 8. The CSEA agrees to release any future claim for court reporting work at the Distict Attorney's office under Section 32 of the CBA. However, the parties agree if the DA court reporting work is ever given to County employees, such work is unit

5

work and such employees will be represented by CSEA.

(*Id.*)

On August 16, 2007, plaintiffs made a motion in the Supreme Court of the State of New York, Nassau County, to modify the Consent Award dated December 15, 2006, and to confirm the prior arbitration decision of June 15, 1998. (Am. Compl., Ex. 20.) On January 10, 2008, Judge Cozzens found that "based upon the allegations of Ms. Panariello and Ms. Giardina, the Court finds there to be questions of fact as to whether there was fair representation. Therefore, those branches of the [CSEA's cross-motion] premised upon lack of standing are denied. However, given the fact that Ms. Panariello and Ms. Giardina both accepted payments pursuant to the Consent Award dated December 15, 2006, the Court finds that the Consent Award was ratified. As such, the application of Ms. Panariello and Ms. Giardina is denied." (*Id.*)

In the instant action, plaintiffs claim that "CSEA's failure to enforce the binding arbitration award [of 1998] was a breach of the CBA and of their duty of fair representation." (Am. Compl. ¶ 39.) Plaintiffs also assert that "Arbitrator Scheinman abused his authority, overstepped his bounds, and resorted to threats and coercion in order to obtain what he called a 'settlement.'" (*Id.* ¶ 49.) Specifically, the amended complaint alleges that Arbitrator Scheinman threatened to reduce plaintiffs' award pursuant to the 1998 arbitration in ways that he was not authorized to do, in order to effect a settlement. (*Id.* ¶¶ 50-53.) The amended complaint further alleges that the Consent Award reduced to writing by Arbitrator Scheinman "bore no resemblance to anything that was actually agreed to or coerced out of Plaintiffs at the Arbitration, and consequently Plaintiffs were harmed both monetarily and emotionally by what transpired. Additionally, Plaintiffs never signed anything stating they agreed to this so-called 'Consent Award.'" (*Id.* ¶ 54.) The plaintiffs also argue that "over the years there inexplicably seemed to be a pattern of the appearance of impropriety and collusion on the part of and between the County and CSEA concerning Plaintiffs' Arbitration by all that had transpired." (*Id.* ¶ 63.) Plaintiffs allege that "the Union's conduct was 'grossly deficient' and in 'reckless disregard' of the members' rights." (*Id.* ¶ 64.)

B. Procedural History

On May 19, 2008, plaintiffs filed the complaint in this action. On May 21, 2008, plaintiffs filed an amended complaint. On July 30, 2008, defendants filed motions to dismiss plaintiffs' amended complaint. On August 29, 2008, plaintiffs filed an opposition to defendants' motions and also sought leave to amend to add allegations with respect to the Section 1983 claim. On September 15, 2008, defendants filed replies. The Court has considered the parties' submissions.

II. STANDARD OF REVIEW

The defendants have moved to dismiss both under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to

6

dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Further, in reviewing a motion to dismiss under Rule 12(b)(6), "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphases in original). Courts also "'routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06-CV-2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Coveal v. Consumer Home Mortgage, Inc.*, No. 04-CV-4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *7 (E.D.N.Y. Oct. 21, 2005) (quoting *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally." 537 F.3d 185, 191 (2d Cir. 2008) (citations

7

and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)); *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004).

### III. DISCUSSION

Defendants move to dismiss plaintiffs' amended complaint on the basis that this Court lacks subject matter jurisdiction to hear the claims, the claims are untimely, and the claims are barred by the doctrines of *res judicata* and collateral estoppel. The Court will address each issue in turn.

### A. Subject Matter Jurisdiction

In the amended complaint, plaintiffs attempt to create federal question subject matter jurisdiction under 28 U.S.C. § 1331 based upon the following statutes: (1) the Federal Arbitration Act (the "FAA"); (2) the Administrative Procedure Act (the "APA"); (3) the Labor Management Relations Act ("LMRA"); and (4) 42 U.S.C. § 1983 ("Section 1983").

As set forth below, no independent basis for federal jurisdiction exists under the FAA, the APA, or the LMRA in connection with this case. However, plaintiffs have properly invoked the Court's jurisdiction under Section 1983 in connection with their claim that the defendants, in connection with arbitration proceedings in 2006, deprived the plaintiffs of due process. The Court cannot determine that any such Section 1983 claim is necessarily frivolous on its face and, thus, the Court must examine the non-jurisdictional grounds for dismissal of the Section 1983 claim.

### 1. FAA

First, defendants argue that there is no subject matter jurisdiction pursuant to the FAA because "[t]he FAA does not grant an independent basis for subject matter jurisdiction." (County's Reply Memorandum of Law, at 2.) Defendants argue that "[t]he determination of whether the plaintiffs should have accepted and ratified the settlement or waited for a determination from the arbitrator is not a federal question. Similarly, the plaintiffs' allegations that the arbitrator exceeded his authority and the plaintiffs accepted the settlement under duress does not create a question of federal law." (County's Reply Memorandum of Law, at 3.)

The Court agrees. In particular, the Court recognizes that there must be an independent basis to create federal jurisdiction for a claim under the FAA, such as diversity of citizenship. *See, e.g., Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26 (2d Cir. 2000) ("Petitions to compel arbitration must be brought in state court unless some other basis for federal jurisdiction exists, such as diversity of citizenship or assertion of a claim in admiralty.") (quotations and citations omitted); *In re Prudential Sec., Inc.*, 795 F. Supp. 657, 660 (S.D.N.Y. 1992) ("Section 4 [of the Arbitration Act] provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.") (citation and quotation marks omitted).

Plaintiffs appear to concede this point. (*See* Plaintiffs' Memorandum of Law, at 10 ("Defendant CSEA's claim that the LMRA and FAA do not confer independent jurisdiction in this Court may be correct.").) However, in the instant case, there would be no independent federal jurisdiction over the defendant's claim under the FAA based upon diversity jurisdiction because plaintiffs do not assert that diversity jurisdiction exists.[1]

In short, federal jurisdiction arises when the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). It is clear that plaintiffs' claims attempting to confirm the prior arbitration award and vacate the Consent Award do not meet this standard. *See Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1105 (7th Cir. 1996) (finding a "motion to vacate [an arbitration decision] on grounds of fraud, corruption, undue means, evident partiality, and failure to consider pertinent and material evidence, does not require the resolution of any federal issue, let alone a 'substantial question of federal law.'"); *Perpetual Secs., Inc. v. Yu Min Wang*, 99 Civ. 335 (SHS), 1999 U.S. Dist. LEXIS 12639, at *4 (S.D.N.Y. Aug. 16, 1999) (finding no subject matter jurisdiction where plaintiff brought a motion to vacate an arbitration award because "the arbitrators: 1) exceeded their authority; 2) committed various acts of misconduct; 3) manifestly disregarded the law of respondeat superior; and 4) made erroneous damage calculations.").

Further, to the extent that plaintiffs are seeking subject matter jurisdiction on the basis of a federal question in the underlying arbitration, it has been clearly established that a federal question in an underlying arbitration does not establish subject matter jurisdiction in an action seeking to vacate or confirm that award. *See, e.g., Greenberg*, 220 F.3d at 26 ("Simply raising federal-law claims in the underlying arbitration is insufficient to supply this 'independent basis' [of federal jurisdiction]."); *Perpetual Secs.*, 1999 U.S. Dist. LEXIS 12639, at *3 ("The mere fact that the arbitration underlying this dispute may have involved the resolution of federal claims does not mean that this Court has subject matter jurisdiction over this petition to vacate.").

Accordingly, the FAA does not provide an independent basis for federal jurisdiction.[2]

### 2. The APA

Next, defendants argue that "[t]he administrative procedure act applies to controversies involving the agencies and authorities of the United States government. The plaintiffs' claims do not involve the agencies and authorities of the United States government, therefore jurisdiction cannot be obtained pursuant to the Administrative

---

[1] In fact, defendants assert, and plaintiffs do not dispute, that all parties to this lawsuit are New York citizens. (*See* County's Memorandum of Law, at 7.)

[2] In any event, any attempt to confirm a 1998 Arbitration Award or vacate a 2006 Consent Award would be untimely under the FAA which requires that any motions to confirm or modify an arbitrator's award be brought within one year. *See* 9 U.S.C. § 9. This lawsuit, filed on May 19, 2008, is clearly outside that statutory period.

9

Procedure Act." (County's Memorandum of Law, at 7.) Plaintiffs do not counter this argument in their papers and there is clearly no basis for a federal claim under the APA. There is no allegation that any agencies or authorities of the United States are involved in any aspect of the alleged conduct in the amended complaint. Therefore, the Court agrees that subject matter jurisdiction pursuant to the APA does not apply here.

### 3. The LMRA

Plaintiffs' amended complaint also asserts subject matter jurisdiction pursuant to the Labor Management Relations Act, but plaintiffs noted in their response to defendants' motion to dismiss that they "might have erred in their claims of subject matter jurisdiction that relate to the LMRA." (Plaintiffs' Second Memorandum of Law, at 9.) This Court agrees.

Although district courts have subject matter jurisdiction over actions challenging arbitration awards if there is jurisdiction under the LMRA, *see, e.g., CITGO Asphalt Ref. Co. v. Paper, Allied-Indus., Chem., & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 815 (3d Cir. 2004), "a failure to state a claim under section 301(a) of the LMRA is a defect in subject-matter jurisdiction." *See Granite Rock Co. v. Int'l Bhd. of Teamsters, Local 287*, 546 F.3d 1169, 1176 (9th Cir. 2008). Therefore, a meritless claim under LMRA cannot support subject matter jurisdiction.

In the instant case, although plaintiffs attempt to create subject matter jurisdiction by asserting that the union breached its duty of fair representation (a "DFR" claim), such a claim does not create federal jurisdiction under the LMRA or any other federal statute for public employees such as plaintiffs. It is well settled that the LMRA and the National Labors Relations Act "do[] not vest federal district courts with subject matter jurisdiction over claims[, as here,] by public employees against their unions for breach of the duty of fair representation." *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 104 (E.D.N.Y. 2004) (citations omitted); *accord Jackson v. New York City Transit*, No. 05-CV-1763, 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005); *see also Burton v. Niagara Frontier Transp. Auth.*, No. 08-CV-093A, 2008 WL 4107188, at *4 (W.D.N.Y. Aug. 28, 2008) ("'Federal courts have . . . held that public employees cannot sue their employers under the LMRA for breaching collective bargaining agreements, and also cannot bring hybrid Section 301 claims against their unions for breach of the duty of fair representation.'") (quoting *Baumgart v. Stony Brook Children's Serv., P.C.*, 2005 WL 2179429, at *5 (E.D.N.Y. 2005), *aff'd*, 249 Fed. Appx. 851 (2d Cir. 2007) (unpublished)); *Ford v. D.C. 37 Union Local 1549*, No. 07 Civ. 1875 (DC), 2008 WL 1055765, at *3 (S.D.N.Y. Apr. 10, 2008) ("It is undisputed that DC 37 is a public employee union and that DHMH, which employed [plaintiff], is an agency of the City of New York. Therefore, [plaintiff] is precluded from asserting her LMRA claim against DC 37, and this Court lacks subject matter jurisdiction."); *Harris v. United Federation of Teachers, New York City Local 2*, No. 02-CV-3257 (GEL), 2002 WL 1880391, at *2 (S.D.N.Y. Aug. 14, 2002) (federal jurisdiction lacking over public school teacher's claim against union for breach of its duty of fair representation).

Accordingly, because plaintiffs are public employees, the LMRA does not provide a

basis for federal jurisdiction over any claims of breach of a duty of fair representation.[3]

4. Section 1983 Claim

Plaintiffs assert that federal question jurisdiction exists under Section 1983 based upon the alleged violation of their due process rights in connection with the arbitration. Specifically, plaintiffs' Section 1983 claim is that "based on their civil service status they had an expectation of continued employment and a property interest in their employment, as well as an entitlement and a property interest to the Defendant County's required contribution to their retirement as well as the Defendant County's required contribution for Plaintiffs' Social Security benefits, which is a protected property interest." (Plaintiffs' Second Memorandum of Law, at 10.)

Defendants argue that this claim is a futile attempt to create federal jurisdiction under Section 1983, even though none exists. For example, the County argues: "Plaintiffs were laid off from employment in 1992. They received due process in the form of an arbitration and years of legal representation in court and arbitration in an attempt to resolve the issue. Plaintiffs' factual allegations relate to a claim of a breach of the duty of fair representation and an arbitrator's alleged misconduct, not to any federal question, and these claims should also be dismissed." (CSEA's Reply Memorandum, at 6.)

The Court declines to dismiss the Section 1983 claim on jurisdictional grounds. On its face, plaintiffs' due process claim appears to present a federal question under Section 1983 sufficient to provide subject matter jurisdiction. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) ("On the subject matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief – a merits-related determination.") (quotations and citation omitted); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361-66 (2d Cir. 2000) ("Court decisions often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or failure to state a claim."); *Rene v. Citibank NA*, 32 F. Supp. 2d 539, 543 (E.D.N.Y. 1999) ("to the extent the defendants contend that they are not amenable to a Section 1983 suit because they did not act under color of state law, such arguments are more appropriately raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim").[4] Under certain circumstances, a County employee can assert

---

[3] In any event, even if a hybrid Section 301/fair representation claim could exist with respect to the alleged 2006 conduct by the County and union, it is clearly time-barred because this lawsuit was not brought within the applicable six-month statute of limitations for such claims. *See Carrion v. Enterprise Ass'n Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) ("[A] six-month statute of limitations applies to hybrid § 301/fair representation claims.").

[4] Although the Court may also dismiss for lack of subject matter jurisdiction if the claims that provide federal jurisdiction are "immaterial and made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. 678, 682-83 (1946), the Court is unable to reach that conclusion here.

a plausible Section 1983 claim against the County for violation of his Fourteenth Amendment right to procedural due process in connection with determinations made in connection with his or her employment, and such rights were not waived by the CBA. *See, e.g., Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("In summary, the Fourteenth Amendment granted Ciambriello the right to notice and an opportunity to be heard prior to his demotion, the County failed to provide such notice or opportunity, and Ciambriello did not waive this right in the CBA. Therefore, Ciambriello has sufficiently alleged a § 1983 claim against the County and the individual defendants for violation of his Fourteenth Amendment right to procedural due process.").[5]

Thus, as discussed below, the Court will address the non-jurisdictional grounds for dismissal of the Section 1983 claim – namely, statute of limitations and *res judicata* – which defendants argue provide independent grounds for dismissal of the Section 1983 claim under Rule 12(b)(6). *See, e.g., Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."); *Calemine v. Gesell*, No. 06 CV 4736 (SJ) (RM), 2007 WL 2973708, at *1 n.1 (E.D.N.Y. Sept. 28, 2007) ("Though Defendants move pursuant to Rule 12(b)(1) and 12(b)(6) for failure to state a claim, the grounds for their motion, res judicata and statute of limitations, are both properly considered under Rule 12(b)(6).").

B. Statute of Limitations

Defendants argue that any claims under Section 1983 are based upon conduct that occurred in the 1990s and, thus, are barred by the applicable three-year statute of limitations. As set forth below, the Court disagrees. The amended complaint alleges that, among other things, plaintiffs' due process rights were violated by the defendants during the arbitration proceedings in 2006. Thus, any Section 1983 claim based upon the alleged 2006 conduct would not be time-barred.

As there is no federal statute of limitations governing the Reconstruction-era civil rights statutes, the Supreme Court has advised that "federal courts should select the most appropriate or analogous state statute of limitations" to determine the proper limitations period. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987), *superseded on other grounds by statute*, 28 U.S.C. § 1658(a), *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *accord Wilson v. Garcia*, 471 U.S. 261, 276 (1985). With regard to Section 1983 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York pursuant to New York Civil Practice Law § 214(5). *See Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002), *cert. denied*, 538 U.S. 922 (2003). However, federal law governs the

---

[5] Although Ciambriello also brought a claim against the union, and the Second Circuit recognized that a private actor can act under color of state law if it is a willful participant in joint activity with a state actor, the Second Circuit concluded that plaintiff's conclusory allegations of conspiracy were insufficient to assert a Section 1983 claim against the union and left it "to the sound discretion of the District Court whether to permit Ciambriello to replead his conspiracy claim." *Ciambriello*, 292 F.3d at 325.

question of when a Section 1983 claim accrues. *See M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003); *Pearl*, 296 F.3d at 80; *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999). Under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington*, 171 F.3d at 121 (quotations and citations omitted).

Thus, in the instant case, because the complaint was filed on May 21, 2008, any Section 1983 claims based upon conduct by the defendants prior to May 21, 2005 are time-barred. Although the County suggests that plaintiffs' due process claims only relate to events surrounding plaintiffs' termination in the early 1990s, the Court disagrees. The amended complaint explicitly asserts that "Plaintiffs' 14th Amendment Right to due process, as well as Plaintiffs' equal protection under the law, were violated, as evidenced by the transcript of the September 14, 2006 hearing." (Am. Compl. ¶ 48.) Specifically, with regard to the claim of a lack of due process, the amended complaint alleges, among other things, the following: (1) "[a]t the Arbitration hearing of September 14, 2006, Plaintiffs were denied the opportunity to give testimony and produce evidence;" (2) "Janice Goodman, Esq., Plaintiff Giardina's witness, testified telephonically;" (3) "[p]laintiff Giardina was precluded from cross-examining Attorney Goodman;" (4) "[o]n September 14, 2006, in the midst of the hearing, Arbitrator Scheinman abruptly dismissed the court reporter that was in attendance;" and (5) Arbitrator Scheinman asked to speak privately with the greivants and, outside the presence of their legal representative, "resorted to threats and coercion in order to obtain what he called a 'settlement.'" (*Id.* ¶¶ 48-49.)

In short, with respect to the alleged conduct in 2006 that is the basis for the Section 1983 claim, the motion to dismiss on statute of limitations grounds is denied.

C. Res Judicata and Collateral Estoppel

Defendants also argue that plaintiffs' Section 1983 claim is barred by the doctrines of *res judicata* and collateral estoppel. In particular, defendants note that plaintiffs previously filed a motion in Nassau County Supreme Court seeking to modify the 2006 Consent Award, as well as to confirm and enforce the 1998 Tempura arbitration award. On January 10, 2008, Judge Cozzens issued a decision denying plaintiffs' motion on the grounds that plaintiffs ratified the Consent Award by accepting payments pursuant to that award. Thus, defendants contend, any effort by plaintiffs in the instant lawsuit to re-litigate that issue is barred by the doctrines of *res judicata* and collateral estoppel.

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment. *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("the defense of res judicata or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment"); *see Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992), *cert. denied*, 506 U.S. 821 (1992). In addition, the relevant facts for this motion, namely the decision in the Supreme Court for the State of New York, Nassau County action, are public documents subject to judicial notice, and are not in dispute. *See Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607 (DC), 2005 WL 1844642, at *3

(S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts.").

The doctrine of *res judicata*, otherwise known as claim preclusion, prevents parties from re-litigating issues in subsequent litigation that were or could have been litigated in a prior action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). Because the prior decision at issue was rendered by a New York State court, New York's transactional analysis of *res judicata* governs, *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982), an analysis which "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). This transactional approach "does not . . . permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action." *Beckford v. Citibank N.A.*, No. 00 Civ. 205, 2000 U.S. Dist. LEXIS 15549, at *9-*10 (S.D.N.Y. Oct. 24, 2000) (quoting *Henry Modell & Co. v. Minister, Elders & Deacons of Ref. Prot. Dutch Church*, 68 N.Y.2d 456, 462 n.2 (N.Y. 1986)). The doctrine applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted). Finally, "[i]n determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.* Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999). Furthermore, in evaluating the *res judicata* effect of a prior action, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."[6] *In re Hyman*, No. 05-7026-BK,

---

[6] The Second Circuit has stated that, where as here a party is seeking to enforce a New York judgment, New York law is applied. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply federal law in determining the preclusive effect of a federal judgment and New York law in determining the preclusive

14

2007 WL 2492789, at *3 (2d Cir. Sept. 6, 2007) (citations omitted); *accord Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (1985)).

In the instant case, defendants have raised a significant *res judicata*/collateral estoppel argument with respect to plaintiffs' claims, including the Section 1983 claim. Of course, plaintiffs would be precluded from trying to raise, in the guise of a Section 1983 claim, the same issues presented to Judge Cozzens in an attempt to argue that his decision was erroneous. The state appellate courts would have been the proper venue for any such arguments. However, it is unclear whether plaintiffs are attempting to litigate some aspect of the 2006 proceedings in connection with their Section 1983 claim that would not be barred by *res judicata*/collateral estoppel. Moreover, as discussed below, plaintiffs requested an opportunity to amend their complaint in response to defendants' motion to dismiss in an effort to further articulate the basis of their Section 1983 claim. Because the precise parameters of plaintiffs' proposed Section 1983 claim are not entirely clear, and because they are proceeding *pro se*, the Court will afford them an opportunity to amend their complaint to further articulate the Section 1983 claim and address the *res judicata*/collateral estoppel issues raised by defendants.

D. Opportunity to Re-plead

"Where dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Shelton v. Trs. of Columbia Univ.*, No. 06-CV-0664, 2007 U.S. App. LEXIS 12184, at *3 (2d Cir. May 23, 2007) (summary order) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). As stated above, although there appears to be a significant *res judicata*/collateral estoppel issue with respect to any Section 1983 claim by plaintiffs, the Court is unable to conclude at this juncture that any attempt to re-plead the Section 1983 claim – in order to more clearly state the basis for that claim, and thereby potentially address the *res judicata*/collateral estoppel issue – would be futile. Therefore, in an abundance of caution, the Court grants plaintiffs one opportunity, under Rule 15(a) of the Federal Rules of Civil Procedure, to amend their complaint to further articulate the Section 1983 claim. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (quotation omitted); *Rhodes v. Hoy*, No. 05 Civ. 0836, 2007 U.S. Dist. LEXIS 48370, at *8 (N.D.N.Y. May 5, 2007) ("[C]ourts should not dismiss a pro se litigant's complaint without granting leave to amend when there is any indication that a valid claim might be stated. If, however, the court rules out any possibility that the amended complaint will state a claim, the court should not grant the plaintiff leave to

---

effect of a New York State court judgment.") (internal citations omitted).

15

amend his complaint.") (quotation marks and citation omitted). The amended complaint must be captioned as the "Second Amended Complaint" and must bear the same docket number as this Memorandum and Order.

IV. Conclusion

For the reasons set forth above, plaintiffs' motion to amend is granted under Rule 15(a) of the Federal Rules of Civil Procedure and defendants' motions to dismiss plaintiffs' complaint is denied without prejudice to renewal of such motions after the plaintiffs have filed the amended complaint.[7]

The Court will conduct a conference on April 8, 2009 at 2:00 p.m., to discuss with the parties the filing of the amended complaint.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 31, 2009
      Central Islip, NY

\* \* \*

The plaintiffs are proceeding *pro se*: Kathleen Giardina, 1849 Longfellow Street, Baldwin, New York 11510; and Lynn Panariello, 204 Palo Alto Drive, Plainview, New York 11803. The attorney for the defendant County is Susan M. Tokarski, Esq., Deputy County Attorney of Nassau County, One West Street, Mineola, New York 11501. The attorney for defendant CSEA is Ellen M. Mitchell, Esq., Civil Service Employees Association, Inc., Box 7125, Capitol Station, 143 Washington Avenue, Albany, New York 12224.

---

[7] Because is still unclear whether any federal claim can survive a motion to dismiss, the Court declines at this early juncture to exercise jurisdiction over any pendent state claims for breach of the duty of fair representation, to the extent that the complaint alleges such a cause of action. Thus, at this juncture, the Court also does not consider defendants' arguments that such causes of action should also be dismissed because they are, among other things, time-barred.